UNION TRUST COMPANY, Trustee under Will of
    JOSEPH L. CURBY, v. MARGARET W.
    CURBY et al.; MARY E. CALNANE and WIL-
    LIAM C. AYER, Administrator, With the Will
    Annexed, of JOSEPH L. CURBY, Appellants.

Division One, March 3, 1914.

1. **WILL: Residuum: Death of Legatee.** Where the will gave
    the residue of the estate to testator's wife, his son, and the son
    of a deceased son, in equal shares, the gift to the wife, upon
    her death prior to testator's death, lapsed, and the will express-
    ing no provision as to whom her share should go in that event,
    the testator died intestate as to it, and it passed to and vested
    in his heirs at law, under the Statute of Descents and Distribu-
    tion, who in this case were said son and grandson.

2. ————: **Trust Fund: Death of Beneficiary: Reversion to
    Residuary Legatees: Executory Bequest: Remainder in Per-
    sonalty.** The seventh clause of the will gave to trust com-
    panies $150,000 in trust for testator's three grandsons, one of
    whom was Joseph L., "in equal shares, payable to them re-
    spectively when they arrive at the age of thirty-five years, and
    should any one of them die without leaving issue then the
    share of such beneficiary shall go to those who may have been
    declared entitled to the residuum of my estate in the propor-
    tions in which such residuum was ordered to be paid to the
    residuary legatees by the order of the probate court having
    jurisdiction of my estate. The net interest or earnings of the
    said trust funds shall be paid to such residuary legatees in the
    proportions determined by such probate court semiannually
    during said trust period, except as hereinafter otherwise provid-
    ed. In case any one of said grandsons is a profligate and unable
    to take proper care of his share of the said trust fund  *   *   *
    when he arrives at the age of thirty-five years, then the said
    trust shall continue until such time as the said beneficiary
    manifests his capacity to take proper charge and economically
    manage such fund" and "during such time" of incapacity "the
    .net interest and earnings shall be paid quarterly to such bene-
    ficiary. In the event of either of said beneficiaries becoming in-
    capacitated from earning a living by accident or disease before
    he arrives at the age of thirty-five years, then during such period
    of such disability said beneficiary shall be entitled to receive
    the net earnings of his share of said trust fund instead of the
    residuary legatees, as before provided." By a subsequent clause

the will gave the residue of the estate, in equal shares, to his wife, one of the grandsons, the said Joseph L., who was a son of testator's deceased son, and his son Clarence E., who was the father of the other two grandsons. The wife died before the testator did, and Joseph L. died, unmarried and without issue, soon after final settlement, aged twenty-four years. *Held*, that by the said seventh clause of the will the grandsons did not upon testator's death take an absolute title to the trust fund, and the time when they were by the will to take was not the date of the testator's death; but, by Sec. 2873, R. S. 1909, and by the language of the will itself, upon the death of said grandson without issue before he arrived at the age of thirty-five years, his share went to the residuary legatees, and as the legacy to testator's wife lapsed, the remaining residuary legatee, Clarence E., upon the death of the other, Joseph L., before his thirty-fifth year, was entitled to his share, or one-third, of the trust funds, together with the entire income thereafter upon the remainder of the trust funds, until the other two grandsons reached thirty-five years, unless disabled by accident, etc., and no part of the income of said trust fund, except one-half thereof earned prior to Joseph's death, passed by Joseph's will bequeathing his property to his mother. The two clauses created an executory bequest to the grandsons, determinable as to each upon his death without issue before reaching the age of thirty-five years.

3. ———: ———: ———: Executory Interest in Residue. Where the will gave a certain trust fund to a trustee in trust for testator's grandson and made it payable to him when he reached the age of thirty-five years and provided that the income should be paid to his residuary legatees until he reached that age, and that if he died without issue his share should go to them, and named him as one of the residuary legatees, and by a codicil testator provided that "in case of the death of my said grandson without legal issue of child or children, his residue reverts back to my estate," the will as a whole gave to said grandson an executory interest in the residuary estate, determinable upon his death without issue, and upon his death at the age of twenty-four years, unmarried and without issue, all his interest in the trust fund and residuary estate went to the surviving residuary legatees.

4. ———: Unambiguous: Rules of Construction. Where the will is unambiguous and its meaning clear, resort to technical rules of construction is not necessary.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

AFFIRMED.

*W. M. Williams, Judson, Green & Henry* and *George F. Beck* for appellants.

(1)   The trial court erred in holding that, upon the death of Joseph L. Curby, Jr., without issue, be- fore he arrived at the age of thirty-five years, his share in the trust funds given to the three trust companies, under the seventh clause of the will, passed to Clarence E. Curby, sole surviving residuary beneficiary; and in refusing to adjudge in the decree that Joseph L. Curby, at the death of the testator, became the absolute owner of said share of the trust funds, the payment thereof to him only being postponed until he became thirty-five years old.   The rule is well settled that an absolute gift vests title in the legatee notwithstanding a provision for the payment of the legacy at some future day or when the legatee reaches a certain age.   Harris v. Cook, 98 Mo. App. 38; Warner v. Durant, 76 N. Y. 133; Wardwell v. Hale, 161 Mass. 396. The bequests given to the grandsons by the seventh clause of the will are given to them individually and not to them as a class, and the rules pertaining to gifts to a class are inapplicable.   Page on Wills, secs. 541-542, p. 626; 2 Williams on Executors, p. 373, note G. The fact that the testator placed the funds in the hands of trustees does not affect the nature, quality, or incidents of the estate given.   The introduction of the trust merely changes the estate from a legal to an equitable one, and the equitable possesses all the incidents and qualities of a legal estate.   Simmons v. Cabanne, 177 Mo. 352; Tremmel v. Kleiboldt, 75 Mo. 255; Cushing v. Blake, 30 N. J. Eq. 689.   The seventh clause of the will does not fix the time at which the death of the grandsons without issue must occur in order that their shares respectively in the trust funds shall be paid to those declared by the probate court to be entitled to the residuary estate.   The time is indefinite, uncertain.

and not fixed by the will. In the absence of words in the will showing a contrary intent the death referred to is during the lifetime of the testator. As the grandsons survived the testator, each took an absolute title to his share of the trust funds. Washbon v. Cope, 144 N. Y. 297; Fowler v. Duhme, 143 Ind. 248; Quackenbos v. Kingsland, 102 N. Y. 128; Stokes v. Weston, 142 N. Y. 433; Shutt v. Rambo, 57 Pa. St. 149; Remsen on Wills, pp. 189-190; Page on Wills, 676; 2 Jarman on Wills (6 Am. Ed.), p. 721. The grandson, Joseph L. Curby, upon the death of the testator, became entitled absolutely—under the seventh clause of the will—to one-half of the income from the trust funds during the entire trust period, Anna J. Curby—the wife of the testator—having died in his lifetime, leaving only two residuary beneficiaries entitled to share in the income. The income was given absolutely during the entire trust period to the residuary beneficiaries, and the trial court erred in refusing to award to the legal representatives of Joseph L. Curby one-half of said entire income during the whole trust period upon the trust funds remaining after the death of Joseph L. Curby, Jr. (2) The testator, by the ninth clause of the will, gave to his grandson, Joseph L. Curby, deceased, one-third of the residue of his estate absolutely with full power to sell, assign, convey, and dispose of the same at his discretion. This absolute gift was not cut down to a less estate by the tenth clause, providing that the grandson's share, except $25,000 to be paid him at his majority, should be held in trust for him by the Union Trust Company of St. Louis, until he became thirty years of age; nor by the indefinite and uncertain provisions of the codicil executed three months after the date of the will, declaring, "In case of the death of my grandson, Joseph L. Curby, without legal issue of child or children, his residue reverts back to my estate." (a) The language of the ninth clause is clear and unam-

biguous.  The residue is given to the three residuary beneficiaries ''and unto their heirs and assigns forever.''  This is reiterated in the second paragraph of the ninth clause.  An absolute estate, with full power of disposition, is conferred by this clause of the will. 1 Jarman on Wills (6 Am. Ed.), p. 517; Gannon v. Pauk, 200 Mo. 88; 1 Underhill on Wills, 446.  (b)  The tenth clause of the will, giving the property in trust to the Union Trust Company to be held for the grandson until he became thirty-five years of age, did not modify or change the character, incidents or quality of the absolute and unconditional estate or interest given by the ninth clause.  It was a present gift, payable to the grandson personally when he became thirty-five years of age.  Wardwell v. Hale, 37 N. E. (Mass.) 196; Harris v. Cook, 98 Mo. App. 38; 40 Cyc. 1589. (c)  The absolute estate given by the will in the first instance ''will not be cut down to any less estate by subsequent or ambiguous words inferential in their intent'' contained in the codicil.  Yocum v. Siler, 160 Mo. 289; Jackson v. Littell, 213 Mo. 58; Chew v. Keller, 100 Mo. 369; Byrnes v. Stillwell, 103 N. Y. 453; Tisdale v. Prather, 210 Mo. 402.  (d)  The law favors vested estates, and wherever possible, in the case of personal property, contingencies, changing or limiting the interest given by the will, are referred to the period of distribution rather than a later time.  40 Cyc. 1504 and 1607.  (e)  The will gave an absolute and indefeasible estate in one-third of the residue to the grandson, Joseph L. Curby.  The codicil did not revoke, alter or change the absolute estate given to the grandson.  The testator could not by the codicil regulate the disposition of the property given absolutely to the grandson by declaring that upon his death without issue ''his residue'' previously given to him absolutely ''reverts back to my estate.''  Roth v. Rauschenbusch, 173 Mo. 582; Young v. Robinson, 123 Mo. App. 187; 40 Cyc. 1585.  (3)  This court has expressly

held that there can be no such thing in this State as "estate tail" in money; and where money is given to the first taker in words sufficient to give an absolute title thereto, a limitation over, in case of the death of the first taker without issue, is void for repugnancy. State ex rel. v. Tolson, 73 Mo. 320; Weed v. Gray, 78 Mo. 64; Hall v. Priest, 6 Gray, 18; Albee v. Carpenter, 12 Cush. 382; Seminary v. Kellogg, 16 N. Y. 83; Hession v. Jacobus, 27 N. J. Eq. 28.

*Rassieur, Kammerer & Rassieur* and *Schnurmacher & Rassieur* for respondents.

(1) When the language of a will is so doubtful or ambiguous that the intention of the testator is not clear, technical rules of construction may be resorted to for the purpose of discovering the meaning. But when the true meaning and intent can be ascertained from the language employed, technical rules must either bend or altogether give way. Gannon v. Albright, 183 Mo. 238; RoBards v. Brown, 167 Mo. 457; Walton v. Drumtra, 152 Mo. 497; Suydam v. Thayer, 94 Mo. 49; Bean v. Kenmuir, 86 Mo. 666. (2) Conceding that appellants are right in their contention that there can be no estate tail in personalty, yet an executory bequest may be created in personal as well as in real property. Gannon v. Albright, 183 Mo. 255; Smith v. Bell, 6 Pet. 68; Harbison v. James, 90 Mo. 411; 4 Kent's Comm., p. 270; 40 Cyc. 1640, 1648. (3) The interests of the grandsons of the testator in the three trust funds of $50,000 each, under paragraph seven of the will, were executory bequests, or bequests determinable on the death of such grandsons, or any of them, without issue, before reaching the age of thirty-five years, with estate over, in such event, to the residuary legatees. And so the interest of the grandson, Joseph L. Curby, Jr., in the residue under paragraph 9 of the will and the codicil, was an executory devise

Trust Co. v. Curby.

and bequest, of an estate determinable on his dying, without issue, before reaching the age of thirty-five, with estate over, in such event, to the surviving residuary devisee and legatee. Sullivan v. Garesche, 229 Mo. 496; Rothwell v. Jamison, 147 Mo. 601; Suydam v. Thayer, 94 Mo. 49; De Lassus v. Gatewood, 71 Mo. 371; Morrow v. Morrow, 113 Mo. App. 444; Richardson v. Noyes, 2 Mass. 56; Olney v. Hull, 21 Pick. 311; Re Barrett's Estate, 85 Neb. 337; Johnson v. Buck, 220 Ill. 226; Woerner, Amer. Law, Admn., sec. 436. (4) Failure of issue, in Missouri, does not, at this time, mean an indefinite failure of issue; the common-law rule on this subject has been changed by statute, and the cases cited by appellants, based on the doctrine of the common law, are therefore of no value. R. S. 1899, sec. 2873; Naylor v. Goodman, 109 Mo. 543; Faust v. Birner, 30 Mo. 414. Even in the absence of statute, the court will refer a failure of issue to a period following the testator's death instead of during his lifetime, where such interpretation will carry out, rather than defeat, the plain intention of his will. Dickerson v. Dickerson, 211 Mo. 483; Olney v. Hull, 21 Pick. 311. Death, without issue, before a particular age, is not an indefinite failure of issue, and a limitation over, on such death, is good. Woerner, Amer. Law Adm., sec. 439, p. 950. (5) The word "revert," in the codicil, was not used in its technical sense, but was employed by the testator to indicate his wish that in the events named the gifts mentioned were "to go" or "to pass" to the surviving residuary devisees and legatees. Beatty v. Universalist Society, 39 N. J. Eq. 463; Passmore's Appeal, 23 Pa. St. 381; Dole v. Keyes, 143 Mass. 239; In re Bennett's Estate, 134 Cal. 320.

WOODSON, P. J.—The plaintiff, trustee under the will of Joseph L. Curby, deceased, instituted this suit against the defendants to construe said will.

Said Curby resided in the city of St. Louis, and departed this life March 8th, 1904. The will was executed August 7th, 1899; and at that time, Anna J. Curby, his wife, Clarence E. Curby, his son, and Joseph L. Curby, Jr., the only child of a deceased son, who died in the lifetime of his father, the testator, and before the will was executed, were all living.

At that time the said Clarence E. Curby had two sons living, namely, Clarence J. Curby and Kennett S. Curby. These are the devisees mentioned in the will of the testator, which will be presently set out.

No question is raised as to the pleadings or the procedure had in the case, consequently they will be put aside.

Said will is in words and figures as follows:

"I, Joseph L. Curby, being of sound mind and disposing memory, do make and publish this my last will and testament, hereby revoking all other wills by me at any time heretofore made.

"First. I direct that all my just debts, including funeral expenses, be paid as soon after my death as possible.

"Second. I give and bequeath to my grandson, Joseph L. Curby, Jr., all my jewelry (except Masonic jewelry), including my watch and chain; also all papers and equipments belonging to me, pertaining to the War of the Rebellion; and to my son, Clarence Edgar Curby, I bequeath all my Masonic jewelry, emblems, books and paraphernalia pertaining to Free Masonry, he to take good care of them without charge therefor being made against him in my estate.

"Third. I give and bequeath to my nephew, Joseph Curby, son of David P. Curby, the sum of one thousand dollars; also to Joseph Curby Welch the sum of five hundred dollars; and also to Joseph Curby Jacobs the sum of five hundred dollars, all of said legacies to be paid within two years after my death.

"Fourth. I also give and bequeath to my sister, Mrs. John O. Taylor, such sum of money as may be required to purchase for her an annuity of six hundred dollars per year, payable to her monthly at the rate of fifty dollars per month. Such annuity shall be purchased by my executors and shall cease to be payable to her when she remarries and thereafter the same shall be payable to my residuary legatees. It is, however, my wish that she remain a member of my wife's family after my death and that she be provided by my wife with board, lodging and clothing as has been heretofore done by my family, and in case such be done it is my wish and request that she pay therefor such sum as she receives from the said annuity so long as she remains a member of my wife's family.

"Fifth. I also give and bequeath to each of my two brothers, William Franklin Curby and Augustus Washington Curby, such a sum of money as may be sufficient to purchase for each of them an annuity of three hundred dollars, payable monthly or quarterly, and such annuities shall be purchased by my executors.

"Sixth. I give and bequeath to my coachman, Smith Williams, colored, the sum of five hundred dollars, providing he remains with me and is in my employ at the time of my death and remains for at least two years after my death with my widow if she so requests.

"Seventh. I give and bequeath to the Union Trust Company of St. Louis the sum of fifty thousand dollars, to the Mississippi Valley Trust Company of St. Louis the sum of fifty thousand dollars, and to the St. Louis Trust Company of St. Louis the sum of fifty thousand dollars, in trust, however, for my three grandsons, Joseph L. Curby, Clarence E. Curby and Kennett S. Curby, in equal shares, payable to them respectively when they arrive at the age of thirty-five years, and should any one or more of them die without

leaving issue then the share of such beneficiary shall go to those who may have been declared entitled to the residuum of my estate in the proportions in which such residuum was ordered to be paid to the residuary legatees by the order of the probate court having jurisdiction of my estate. The net interest or earnings of the said trust funds shall be paid to such residuary legatees in the proportions determined by such probate court semiannually during said trust period, except as hereinafter otherwise provided. In case any one of my said grandsons above named is a profligate and unable to take proper care of his share of the said trust fund, in the opinion of a majority of the said trustees when he arrives at the age of thirty-five years, then the said trust shall continue until such time as the said beneficiary manifests his capacity to take proper charge and economically manage the said fund during such time only, namely, from the time such beneficiary arrives at the age of thirty-five years, and until he manifests the possession of the qualifications and attributes indicating the capacity to take proper care and properly manage the said trust fund the net interest and earnings of said trust fund shall be paid quarterly to such beneficiary. It is also my wish and will that in the event of either of said beneficiaries becoming incapacitated from earning a living by accident or disease before he arrives at the age of thirty-five years, then during such period of such disability said beneficiary shall be entitled to receive the net earnings of his share of said trust fund instead of the residuary legatees, as before provided.

"My reasons for creating above trust are found in the fact that my observations have taught me that in many cases and in many respects too much money in the hands of young people often proves worse than poverty.

"Eighth. I give, bequeath and devise unto my beloved wife, Anna J. Curby, during the period of her

natural life, my homestead, No. 19 North Grand avenue, and the grounds used in connection therewith. I also give and bequeath to her all my households goods and chattels, including kitchen furniture, paintings, statuary (excepting such as is already given in clause two of this will), also my carriages, buggies, horses and harness and such other goods and chattels as are used in connection with my home.

"Ninth. All the rest, residue and remainder of my estate, real, personal and mixed property, wheresoever situate, I give, bequeath and devise, in equal shares, unto my beloved wife, Anna J. Curby, my son, Clarence E. Curby, and my grandson, Joseph L. Curby, and unto their heirs and assigns forever.

"To have and to hold the said rest, residue and remainder of my estate unto the said Anna J. Curby, Clarence E. Curby and Joseph L. Curby and unto their heirs and assigns forever, with the sole qualification as to the interest and share given to the said Joseph L. Curby as is contained in the next paragraph of my will, and as to all beneficiaries with the qualification contained in the twelfth paragraph of my will.

"Tenth. The share of my estate above given, bequeathed and devised unto my grandson, Joseph L. Curby, is first given and devised unto the Union Trust Company of St. Louis in trust for the said Joseph L. Curby until he arrives at the age of thirty years, with the exception of twenty-five thousand dollars of said share of my estate which shall be payable to him when he arrives at his majority. The said trustee shall be entitled to five per cent of the net income of the said bequests and devises during such time as the same may remain in its charge and keeping and the remainder of the net income shall be paid to the said beneficiary quarterly during the time said trust company may have charge thereof.

"Eleventh. Herewith I nominate and appoint as executors hereof my beloved wife, Anna J. Curby, my

son, Clarence E. Curby, and Preston S. Donoho, and at the same time request that no bond be required of them or either of them for the faithful discharge of their duties.

"Twelfth. I hereby direct that if any one of the devisees or legatees named in this will, either directly or indirectly, bring or prosecute, or aid in bringing or prosecuting, any suit or proceeding to break this will or to have the same declared not my will, then the legacies herein given to all such shall be and stand annulled and revoked, and such contestants shall each only be entitled to have and receive in lieu of such legacies the sum of one hundred dollars.

"In testimony whereof, I have hereunto set my hand and seal this seventh day of August, 1899."

Here follows the signature of the testator, and the attestation and signatures of the witnesses.

Codicil No. 1.

"Preston S. Donoho, acting as bookkeeper, secretary and treasurer of my estate, shall receive the sum of one hundred dollars per month or twelve hundred dollars per year as compensation therefor.

"If, in the opinion of the executors, a bond is desired for moneys that he may be responsible for, the State may ask and take bond for such moneys as may come into his hands and charge the same to the estate through any worthy trust company approved by the probate court.

"All books and accounts held in charge by the said Preston S. Donoho must be audited and approved by my executors and the probate court at least every six months.

"In the case of the death of my grandson, Joseph L. Curby, without legal issue of child or children his residue reverts back to my estate. Also, in the case of the death of my son, Clarence E. Curby, before the entire settlement of the estate is made, only thirty-three and one-third of his residue reverts to his es-

tate and the sixty-six and two-thirds reverts back to my estate.

"The maintenance for my beloved wife, Anna J. Curby, is not to exceed five thousand dollars per annum and she is to keep up all repairs, without rent, and if she wishes to dispose of any personal property she is to return the proceeds to my estate. . She is also to maintain, clothe and educate the aforesaid Joseph L. Curby out of the above allowance, except, that if it is thought necessary to send him outside of the city to complete his education, then all extra expense, including transportation, shall be charged to my estate.

"In testimony whereof, I have hereunto set my hand and seal this third day of November, 1899."

Then follow the signatures of the testator and those of the witnesses, etc.

Anna J. Curby, the wife of the testator, departed this life prior to the death of her husband, the testator.

Joseph L. Curby, Jr., the grandson of the testator, survived the latter, but departed this life at about the age of twenty-four years, which was after the final settlement of the testator's estate was made.

The will was duly probated in the probate court of the city of St. Louis, on March 18, 1904.

The wife, Anna J. Curby, having died prior to the death of the testator, letters testamentary were duly granted to the two remaining executors, Clarence E. Curby and Preston S. Donoho.

The estate consisted of the testator's homestead, three dwellings, and personal property valued at about $500,000.

The executors, before final settlement, and without an order of distribution, delivered securities of the value of $50,000 to each of the three trust companies mentioned in the will, as the trustees for the testator's three grandsons.

In lieu of the annuities provided for in the fourth and fifth clauses of the will, $20,000 in bonds were deposited with the St. Louis Trust Company, under an agreement with the residuary legatees, to pay the income thereon to the annuitants in lieu of said annuities —the bonds, of course, constituting a part of the residuary estate.

The residue of the estate was voluntarily, without notice or an order of the probate court, distributed by the executors; giving one half to the son, Clarence E. Curby, and the remainder to the Union Trust Company, as trustee, for the grandson, Joseph L. Curby, residuary legatees.

The executors duly published a notice of their intention to make final settlement of the estate, but not of intention of applying for an order of distribution, nor was an order of distribution, as previously stated, made by the probate court, at any time.

Upon final settlement the record shows that there was nothing remaining in the hands of the executors for distribution among any of the legatees. The final settlement of the executors was duly approved.

The record also shows that neither Joseph L. Curby nor the Union Trust Company, as trustee, were present or represented in the probate court at the time the final settlement was made and approved and the executors discharged.

The trustees of the three trust funds of $50,000, each paid one-half of the net income, as previously stated, to Clarence E. Curby, and the other half to the grandson Joseph L. Curby, Jr., during his lifetime. The income on one-half of the residue was paid to Joseph L. Curby during his life; and when he became twenty-one years of age, the executors paid him $25,000, as directed by the tenth clause of the will.

The said Joseph L. Curby, Jr., was born January 4, 1884, and departed this life November 22, 1907, at the age of twenty-three years, ten months and eighteen

days. He never married, and of course left no descend-
ants. He died testate, and bequeathed all his property
to his mother, Mary E. Calnane.

William C. Ayer, having been appointed his ad-
ministrator with the will annexed, duly qualified as
such, and proceeded to discharge the duties thereof.

Clarence E. Curby, the son of the testator, upon
the death of Joseph L. Curby, Jr., the grandson of tes-
tator, claimed and demanded of the trustees one-third
of the special trust funds of $50,000 each created by
the seventh clause of the will for the use of the three
grandsons therein mentioned; also claimed one-third
of the residuary estate given by the will to Joseph
L. Curby, Jr., as well as the entire one-third of the
residue of the estate which the will gave to Anna J.
Curby, who departed this life previous to the death
of the testator, her husband.

These claims were resisted by the other interested
parties; and as a result the Union Trust Company,
as trustee, instituted this suit, asking for a construc-
tion of the will and for instructions of the court in re-
gard to carrying out the provisions thereof.

Upon this state of facts, the circuit court found
and adjudged:

That the share or interest of Joseph L. Curby,
the grandson, in the three trust funds of $50,000 each,
given by the seventh paragraph of the will, terminated
upon his death without issue, before reaching the age
of thirty-five years; and that Clarence E. Curby, the
son of testator, as sole surviving residuary beneficiary,
became entitled at that time to said share in the trust
funds, together with the entire income thereafter up-
on the remainder of said trust funds, the principal of
which was held for the grandsons Clarence J. Curby
and Kennett S. Curby, the grandson, Joseph L. Curby,
being held entitled to one-half of the income on the en-
tire $150,000 to the date of his death, and the portion

thereof not collected during his lifetime to be paid to his administrator.

From this judgment of the circuit court, Mary E. Calnane and William C. Ayer, administrator with the will of Joseph L. Curby, Jr., annexed, duly appealed to this court.

Upon this state of the record counsel for appellants present to this court for determination several legal propositions; since, however, most of them are elementary in character, we will pass them by and come direct to those involving the merits of the case.

It is apparent upon the face of the will that it was not drawn by a person learned in the law, yet by a person possessing considerable intelligence, and who had some knowledge of legal terms. However, it is obvious from the context in which the word "revert" is used, the scrivener did not at all times use it in its strictly legal sense, but in certain instances, in the meaning of the words "to go," or the words "to pass to."

This inaccuracy arises from the fact that in certain instances the testator, for reasons not made clear, provided that when an interest lapsed, such interest should "revert" to the estate, and then go to survivors, instead of willing such interest directly to them.

This inaccuracy should be borne in mind in considering those words in passing upon the legal propositions involved.

I.    There seems to be no controversy regarding the first proposition presented.

The will after making particular bequests to others, gave specific pieces of property, as well as one-third of the residue of the estate to Anna J. Curby, the wife of the testator, who was at the time of the execution of the will, living, but she departed this life prior to the death of her husband, the testator.

**Will: Legatee's Death: Prior to Testator's.**

Counsel for appellants contend, and it seems to be conceded by respondents, that said gift to the wife lapsed upon her death, and that the testator died intestate as to that portion of his property, and consequently it passed to and vested in his heirs at law, under the Statute of Descents and Distributions, who were Clarence E. Curby, the son of the testator, one of the defendants, and who has since died, and Joseph L. Curby, Jr., the only child of a deceased son, who died during the lifetime of his father, the testator. The trial court took this view of that provision of the will, and ruled accordingly.

Counsel for neither party has suggested any error regarding that ruling of the court, and after due consideration, we are satisfied that the ruling of the circuit court in that regard was correct, and in harmony with the law of this State, as announced by the following authorities:  Bramell v. Adams, 146 Mo. 70; Farnsworth v. Whiting, 102 Me. 296; Keniston v. Adams, 80 Me. 290; In re Renton's Estate, 10 Wash. 533; 40 Cyc. 1935-1938.

II.   The second proposition presented is of a more serious nature, and involves one of the two most important questions presented by this record.

The trial court held that upon the death of Joseph L. Curby, Jr., without issue, before arriving at the age of thirty-five years, his share

**Executory Devise: Death of Residuary Legatee: Remainder in Personalty.** of the trust funds of $50,000 each, given to the trust companies under and by virtue of the seventh clause of the will, passed by virtue thereof to Clarence E. Curby, the son of the testator, and sole surviving residuary beneficiary under the will.

Counsel for appellants insist that upon the death of the testator, Joseph L. Curby, Jr., became the absolute owner of said share of the trust funds mentioned, the enjoyment of which by him only being postponed

until he became thirty-five years old, and that upon his death his interest therein passed under his will to his mother, Mary E. Calnane, the appellant.

Counsel for respondents, upon the other hand, insist that the bequests in favor of the three grandsons, aggregating $150,000, under paragraph seven of the will, were executory in character, or bequests determinable upon the death of such grandsons, or any of them, without issue, before arriving at the age of thirty-five years, with the bequest over, in such event, to the residuary legatees.

Counsel for appellants, in support of their insistence, contend that since clause seven of the will does not fix the time at which the death of the grandsons without issue must occur in order that their shares respectively in the trust funds shall be paid to those declared by the probate court entitled to the residuary estate, that time, therefore, is uncertain and indefinite; and that in the absence of language in the will showing a contrary intent, the death, under a well known rule of law, must be understood to refer to a time during the lifetime of the testator; and since the record shows all of the grandsons survived the testator, each of them took an absolute title to his share of the trust funds mentioned.

In support of that proposition we are cited to the following authorities: Washbon v. Cope, 144 N. Y. l. c. 297; Fowler v. Duhme, 143 Ind. 248; Quackenbos v. Kingsland, 102 N. Y. 128; Stokes v. Weston, 142 N. Y. 433; Shutt v. Rambo, 57 Pa. St. 149; Remsen on Wills, pp. 189-190; Page on Wills, sec. 676; 2 Jarman on Wills (6 Am. Ed.), top page 721, side page 1599.

Conceding that the foregoing contention of counsel is a correct statement of the rule as it existed at common law, counsel for respondents insist that said rule has no application to this case for two reasons: first, because they say that rule has been repealed by statute (Sec. 2873, R. S. 1909; Naylor v. Godman, 109

Mo. 543; Faust's Admx. v. Birner, 30 Mo. 414); and, second, because, as they contend, the will upon its face shows that if any one or all of said grandsons should die without issue, before he or they should arrive at the age of thirty-five years, then his or their respective share or shares in the trust funds should pass to the residuary estate.

In my opinion, this construction of the will by counsel for respondent is correct for both reasons assigned.

The statute referred to reads as follows: "Where a remainder in lands or tenements, goods or chattels, shall be limited, by deed or otherwise, to take effect on the death of any person without heirs, or heirs of his body, or without issue, or on failure of issue, the words 'heirs' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor."

This statute fits this clause of the will like a glove fits the hand; and therefore leaves no doubt but what the testator meant that if any one or more of his grandsons should die without issue before he or they reached the age of thirty-five years, then his share should revert to the residuary estate, and finally go to the residuary legatees.

But we are not forced to resort to that cold statutory rule of construction to get at the meaning of the testator, for the reason that immediately after the $150,000 is given to the three grandsons (which will be further noticed), the following limitation is contained in the same paragraph of the will, viz.:

"And should any one or more of them [the grandsons] die without issue, then the share of such beneficiary shall go to those who may have been declared entitled to the residuum of my estate, in the proportions in which such residuum was ordered to be paid to the residuary legatees by the order of the probate court having jurisdiction of my estate."

While this language, if standing alone in the will —absent said statute—might be susceptible of the construction placed upon it by counsel for appellants, when we read this quotation in connection with the clause immediately following it, quite a different intention of the testator is thereby manifested, for he there says: "The net interest or earnings of said trust funds shall be paid to such residuary legatees in the proportion determined by such probate court semiannually, during said trust period," except in case of accident or sickness, etc.

Continuing, the will, in substance, provides that in case any of the grandsons should become a profligate or unable to properly manage his share of the trust funds, in the opinion of a majority of the trustees named in the will, when such grandson arrives at the age of thirty-five years, said trust shall continue thereafter, as long as such grandson manifests his incapacity to economically manage such fund, and during the latter period the net interest and earnings thereof shall be paid quarterly to him.

The will also provides that in case any one of said grandsons should become unable to earn a livelihood on account of sickness or accident, prior to reaching the age of thirty-five years, then he should be entitled to receive, during said period, the net earnings of his share of the trust fund, instead of the residuary legatees, as previously provided by the will.

And by the same paragraph, the testator gave to each of the three trust companies, the sum of $50,000, to be held by them in trust for said beneficiaries, each having an equal interest in all of said funds, on arriving at the age of thirty-five years; but should any one of them die without issue, prior to arriving at said age, then his share of the trust fund should go to the residuary legatees, in the proportions therein stated.

It is perfectly clear from these provisions of the will that none of said grandsons had any interest in

the earnings or income of said trust funds prior to their arrival at the age of thirty-five years. Prior to that time, the will provided that said interest and incomes were payable to the residuary legatees, except, as before stated, in the event that any one of said grandsons should, through accident or disease, become incapable of earning a livelihood, then the same became payable to him during said period of incapacity. But as previously stated, if none of them became incapacitated, then none of them was entitled to receive any of said income, but it was payable to the residuary estate, which ultimately, under the will, passed to the residuary legatees.

Moreover, by reading these two clauses of the seventh paragraph of the will together, it clearly appears that neither the principal nor the income of the trust funds were to be paid to any one of the grandsons, except in case of sickness, until he should reach the age of thirty-five, and if in the meantime he should die without issue, then his share therein should, by the express provisions of the will, pass, not to his heirs, executors, administrators and assigns, but to the "residuary legatees in the proportions" before mentioned, which could not have been done if the absolute title to the trust funds and the income passed to and vested in the grandsons immediately upon the death of the testator, as is contended for by counsel for appellants.

The foregoing construction placed upon clause seven of the will is, in my opinion, made more clear and better fortified by the ninth clause of the will.

Notice the wide divergence of thought running throughout them. In the first, not only the principal of the trust was firmly tied up until the respective grandsons should reach the age of thirty-five years, but the interest and income thereon were likewise withheld from them during the same periods.

Now if the trust fund itself was to pass to and vest in Joseph L. Curby, Jr., immediately upon the

death of the testator, why did he tie up and withhold
from him the income thereof until the former should
arrive at the age of thirty-five years? It seems to me
that was done for the express purpose of preserving
the entire trust fund, principal and interest together,
in order that both should go to the residuary legatees,
in case he should die without issue, before reaching the
age of thirty-five years.

Not only that, the testator was apprehensive that
one or more of his grandsons might become profli-
gate and unable to manage his or their estates, even
after reaching the age of thirty-five years, and in case
that should prove to be true, provision was made by
the same paragraph of the will for a continuation of
the trust in full force, as to such grandson or grand-
sons, even after he or they reached the age of thirty-
five years, and until the trustees became satisfied that
he or they had become capable of managing the same;
but during that time, the trustees were by the will di-
rected to pay him or them quarterly the net interest
or income of the trust fund, but testator never at any
time lost sight of the fact that if one or more of them
should die before arriving at thirty-five years of age
without issue, then the residue of his interest was to
pass to and vest in the residuary legatees. Thereby
showing a fixed purpose and determination on the part
of the testator, to preserve this part of his estate for
his own descendants. In other words, those clauses
of paragraph seven of the will show clearly that the
testator intended to forever preserve this $150,000 in
his own blood-kin.

But how about paragraph nine? Clearly the tes-
tator thought he had, by paragraph seven, effectually
placed the $150,000, mentioned therein, beyond a pos-
sibility of waste, by withholding it from profligate or
incapable grandsons, however long they might live, and
then proceeded by the ninth paragraph to give the re-

siduum of his estate absolutely to his wife, Anna J. Curby, his son, Clarence E. Curby, and his grandson, Joseph L. Curby, Jr., with full power and authority to sell, assign and dispose of, as they might deem proper, except a limitation placed upon the share of Joseph L. Curby, which will be presently noticed, knowing that if they should spend or waste the residuary estate bequeathed to them by the ninth paragraph his wife was amply provided for by the specific bequest given to her by the eighth paragraph and that the three grandsons had a competency, the $150,000, secured to them, with income thereon, and Clarence E. Curby, the son, was a man of mature years and presumably a man of good judgment and business capacity, as no limitations whatever were placed upon the bequest made to him.

In other words, paragraph seven of the will firmly secured to the three grandsons $150,000, and the income thereof, absolutely without power or authority upon their part to alienate or dispose of in any manner whatever; and provided that if any one or more of them should die without issue before arriving at the age of thirty-five, then his or their interest in the trust fund should go to the residuary estate, in order that his wife, son and grandsons would take the same under the residuary clause of the will, and not go to the mother or mothers or collateral heirs of the grandson or grandsons. While upon the other hand, section nine, the residuary clause of the will, gave the residuary estate to his wife, son and grandson, without any limitation whatever, except as previously stated regarding the share of Joseph L. Curby, Jr. He clearly indicated by paragraph seven, that he desired to preserve the $150,000 and its income for the use of his personal descendants; and by paragraph nine, that all of the legatees were at liberty to dispose of the residuary estate in any manner they deemed proper.

III.  This brings us to the consideration of the

**Death of Residuary Legatee: Inheritable Interest of Survivors.** ninth paragraph of the will, which was touched upon in paragraph two of this opinion.

For convenience, we will here copy said paragraph nine, it being short.

"Ninth.  All the rest, residue and remainder of my estate, real, personal and mixed property, wheresoever situate, I give, bequeath and devise, in equal shares, unto my beloved wife, Anna J. Curby, my son Clarence E. Curby, and my grandson Joseph L. Curby, and unto their heirs and assigns forever.

"To have and to hold, the said rest, residue and remainder of my estate unto the said Anna J. Curby, Clarence E. Curby and Joseph L. Curby, and unto their heirs and assigns forever with the sole qualification as to the interest and share given to the said Joseph L. Curby, as is contained in the next paragraph of my will and as to all beneficiaries with the qualification contained in the twelfth paragraph of my will."

(The qualification referred to in paragraph twelve disinherits any legatee who should contest the will; and is therefore immaterial to questions involved in this case, and consequently will not be further noticed.)

As previously stated, paragraph nine of the will gave the residuary estate to Anna J. Curby the wife, Clarence E. Curby the son (who died since the trial in the circuit court), and Joseph L. Curby, Jr., the grandson of the testator, "and unto their heirs and assigns forever."

There can be no question but what this paragraph gave to each of the residuary devisees and legatees a fee in the real estate, and an absolute title to the personal estate constituting the residue of the estate.

For this reason, counsel for appellants insist that Mary E. Calnane, the mother of Joseph L. Curby, Jr., upon his death, took as devisee and legatee, under and

by virtue of his will, his one-half interest in the residuary estate.

Counsel for respondent virtually concede the correctness of that insistence, but seek to avoid the same by contending that said clause nine of the will was materially modified by the codicil dated November 3, 1899.

The ground for this contention is, that paragraph ten of the will, as previously stated, placed a "limitation" upon the interest of the Joseph L. Curby in the residue of the testator's estate, by declaring that said interest is subject to the limitation or qualification that it should be placed in the Union Trust Company, in trust for said Joseph L. Curby, Jr., until he should arrive at the age of thirty years, with the exception that $25,000 thereof should be paid to him upon his reaching the age of twenty-one.

And it may not be out of place to here state that when Joseph arrived at the age of majority, the executors of the estate paid him said $25,000.

It should be borne in mind that the will was executed August 7, 1899, and that the codicil, as previously stated, was executed November 3, 1899, some three months later.

In the fourth clause of the codicil the testator declares that, "In case of the death of my grandson Joseph L. Curby, Jr., without legal issue of child or children, his residue reverts back to my estate;" and said clause of the codicil further provides that in case the death of Clarence E. Curby, the son of the testator, should occur "before the entire settlement of the estate is made, only thirty-three and one-third per cent of his residue reverts to his estate, and the sixty-six and two-thirds per cent reverts back to my estate."

By this clause of the codicil it is clearly seen that a change had come over the heart and mind of the testator regarding the interests he had, by paragraph

255 Mo. 27

nine of his will, given to his son Clarence and grand-son Joseph L. Curby, Jr., in the residuary portion of his estate. By this clause of the codicil, the free hand of disposition given said son and grandson by paragraph nine of the will, was firmly tied, as to the entire interest of the latter, and to the extent of two-thirds of the former. That is, the clause of the codicil quoted regarding the interest of the grandson in the remainder of the estate, limited the absolute gift made to him by paragraph nine of the will, to an estate determinable upon his death, without legal issue, in which case, his share of the residuary estate was to revert to the estate of the testator; and by that clause of the codicil referring to the absolute gift made by paragraph nine of the will to his son Clarence, he limited two-thirds thereof to an estate determinable upon his death before the estate of the testator was fully settled, in which event, said two-thirds were to revert to the estate of the testator.

By reading these two clauses of the codicil it clearly appears, as previously stated, that the testator changed his mind regarding the absolute gifts made of his residuary estate to his son and grandson, and evidently intended thereby to preserve said remainder for his own lineal descendants and not their collateral kindred, as he had clearly done as to the $150,000, by paragraph seven of the will.

It seems to me that this is the clear and unambiguous meaning and intent of the testator, as expressed in the will; and that being true, resort, under the authorities, to technical rules of construction, need not be had, even though it should be permissible, which is exceedingly doubtful. [Suydam v. Thayer, 94 Mo. 49; Gannon v. Albright, 183 Mo. 238; Walton v. Drumtra, 152 Mo. 489; RoBards v. Brown, 167 Mo. 447.]

This view of the case obviates the necessity for us to resort to and apply the numerous rules of construc-

tion presented and relied upon by learned counsel for appellants in construing this will.

In brief, our ruling is that by paragraph seven of the will, an executory bequest was given to each of the three grandsons in and to the three $50,000 trust funds and interest thereon deposited in the three trust companies, determinable as to each and all upon his or their death, without issue before arriving at the age of thirty-five years; and that upon the death of Joseph L. Curby, Jr., who died at the age of twenty-four, without issue, his share in said trust funds reverted to the residuary estate as provided for by said paragraph of the will; and that the ninth paragraph of the will, as modified by clause four of the codicil, after the death of Anna J. Curby, the wife of the testator, gave to Joseph L. Curby, Jr., an executory interest or estate in and to one-half of the residue estate of the testator, determinable upon his death without issue, and that upon his death, his said interest reverted to the residuary estate of the testator; and Clarence E. Curby, being the only surviving residuary legatee and devisee, the same passed to him as such, by virtue of said clause of the will.

This construction of the will is fully supported by the following authorities: Sullivan v. Garesche, 229 Mo. 496 (508); Rothwell v. Jamison, 147 Mo. 601 (615); Suydam v. Thayer, 94 Mo. 49; DeLassus v. Gatewood, 71 Mo. 371; Morrow v. Morrow, 113 Mo. App. 444; Richardson v. Noyes, 2 Mass. 56; Olney v. Hull, 21 Pick. 311; Schnitter v. McManaman, 85 Neb. 337; Johnson v. Buck, 220 Ill. 226; Woerner, Amer. Law. Admn., sec. 436; Burnet v. Burnet, 244 Mo. 491; Armor v. Frey, 226 Mo. 646; Dickerson v. Dickerson, 211 Mo. 483.

The questions here involved have so frequently and so recently been before this court in the cases cited, we feel that no good purpose would be served

by again reviewing the propositions of law therein announced.

There are certain other subsidiary questions presented, and other funds mentioned in the will, but they need not be further noticed or considered, and the latter are not in controversy.

Having found no error in the record, we are of the opinion that the judgment of the circuit court should be affirmed; and it is so ordered. All concur.