NAYLOR *et al.* v. GODMAN *et al.*, *Appellants*

|109 543
|f160 295
|160 309

DIVISION ONE.

1. **Will**: CONSTRUCTION: TESTATOR'S INTENT. A testator, after directing that the whole of his estate should be converted into money and that his debts should be paid, provided in the third clause of his will that the residue should be invested by his executors in land for the use and benefit of six children of his daughter each to have the use and benefit of one-sixth of the sum for life with remainder to his or her children in fee; and in the fourth clause of the will he further provided: "It is my will that, if any or more of my said grand-children shall die without issue, the share of the one or more so dying shall vest in and become the property of the surviving brothers and sisters of deceased equally, subject to the same limitations as the devise was made to the deceased." *Held*, that it was the intention of the testator, that, upon the death of any of the grandchildren without issue, his part of the land, in which he would otherwise have a life-estate and his child or children a remainder, should become the property of his brothers and sisters who survived him.

2. ———: EXECUTORY DEVISE: PERPETUITY. The fourth clause of the
will under Revised Statutes, 1889, section 8837, creates a valid execu-
tory devise; for the limitation *over* is not too remote, it being deter-
minable at the death of the grandchild.

3. **Will, Construction of.** The words in the fourth clause, "if any
of my grandchildren shall die without issue," should not be construed
to apply only to the death of a grandchild before the death of the
testator.

*Appeal from Saline Circuit Court.*—HON. RICHARD
FIELD, Judge.

AFFIRMED.

*Samuel Boyd* for appellants.

(1) In construing the will in this case, the intent
of the testator must govern, and that intent must be
ascertained from the whole will, taking into considera-
tion the situation of the testator, the objects of his
bounty and the circumstances surrounding him at the
time the will was drawn. *Nichols v. Boswell*, 103 Mo.
151. (2) From the third clause of this will it suffi-
ciently appears that the objects of the testator's bounty
were not only the children of his daughter, Mary R.
Godman, but their children, and that his intent was
that the children of Mary R. Godman should have a
life-estate only, and that the remainders should go to
her grandchildren. The intent, so far as that clause
shows it, was to create what, at common law, would
have been an estate tail, and, considering that clause
alone, in the event of the death of any one of the
named persons, without issue, after the death of the
testator, under our statute the property would go to his
or her heirs. R. S. 1889, secs. 8836, 8838; 1 Leading
Cases American Law Real Property, 97; 3 Jarman
on Wills, 174; *Farrar v. Christy*, 24 Mo. 453; *Kenney v.
Mathews*, 69 Mo. 525; *Farrar v. Christy*, 33 Mo. 44.

It will be observed from the agreed statement that, at the time the will under consideration was made, the children of Mary R. Godman had no children. (3) The fourth clause of the will by the words, "die without issue," and "surviving brothers and sisters," has reference only to the death of one or more of the devisees named before the death of the testator, and was for the purpose of substituting the surviving brothers and sisters as the persons to take, immediately upon the death of the testator, and to prevent his dying intestate as to any part of his estate. (4) Words in a will which refer to the death of a devisee, and where the gift to such devisee is immediate—that is, to take effect in possession at the death of the testator—are always construed to mean death of devisee before death of testator, unless the contrary is clearly expressed by the will. 3 Jarman on Wills [Ed. of 1881 with Am. Notes] 605–611; *Wilson v. Bryan*, 14 S. W. Rep. (Ky.) 533; *Reams v. Spann*, 26 S. C. 561; *Coe v. James*, 54 Com. 511; *Pressley v. Davis*, 7 Rich. Eq. (S. C.) 105; *Duncan v. Kennedy*, 9 Bush, 580; R. S. 1889, secs. 8879, 8838.

*W. H. Letcher* and *W. R. Gist* for respondents.

(1) The declarations of law given by the court prescribe a correct rule of construction as applied to the clauses of the will in controversy under consideration. (2) The limitation in the fourth clause of the will creates a perpetuity which is repugnant to the law. *McDowell v. Brown*, 21 Mo. 57. And must, therefore, be eliminated from the will, leaving the other portions of the instrument operative. Schouler on Wills, sec. 466; R. S. 1879, sec. 3941. (3) The construction sought to be placed on the third and fourth clauses of the will by appellants' counsel is not correct. It would

defeat the evident intention of the testator, and give to the devisee a fee-simple estate, when the will expressly says that it shall be "during his (or her) life, with remainder to his children in fee" when speaking of males; "children of her body in fee" ·when speaking of females. In order to support appellants' contention, the words "for life" must be entirely disregarded, and the remainder must be held to vest not in the surviving brothers and sisters, as stated in the fourth clause, but in the heirs of the first taker, whether ·he leave children or not; thus enforcing the rule in *Shelly's case* which has long been abolished. (4) The first executory limitation of a fee which vests destroys all subsequent limitations. The power of disposition is then and thereby exhausted. Fearn, 515. (5) The limitation is too remote, as the absolute power of alienation cannot be suspended beyond two lives in being at the death of the testator, and upon the death of one or more of the devisees in said will, without issue, the surviving brothers and sisters take the fee or remainder in fee. R. S. 1879, sec. 394; *Wood v. Wood*, 5 Paige's N. Y. Ch.

SHERWOOD. P. J.—Action for partition of certain real estate. The cause is bottomed on the proper construction of the following clauses of the will of A. C. Marsh:

"*Third.* That my whole estate of whatsoever kind be converted into money, and after the payment of all necessary expenses and charges of such commission and settlement the balance of the money be invested by my executors in lands for the use and benefit of the children of my daughter, Mary R. Godman, of Saline county, Missouri, in proportion as follows, to-wit: One-sixth of the sum for the use and benefit of my grandson, William C. Godman, during

his life, with remainder to his children in fee; and one-sixth for the benefit of my grandson, Burton L. Godman, during his life, with remainder to his children in fee; one-sixth for the use of my granddaughter, Josephine Clay Godman, during her life, with remainder to the children of her body in fee; one-sixth for the use of my granddaughter, Mollie Godman, during her life, with remainder to the children of her body in fee; one-sixth for the use of my grandson, Beal Godman, during his life, with remainder to his children in fee; one-sixth for the use of my granddaughter, Martha Godman, during her life, with remainder to the children of her body in fee.

"*Fourth.* It is my will that, if any one or more of my said grandchildren shall die without issue, the share of the one or more so dying shall vest in and become the property of the surviving brothers and sisters of deceased, equally subject to the same limitations as the devise was made to the deceased."

The ninth clause of the will is the following:

"*Ninth.* It is my will that my executors purchase lands, and invest the funds arising from sale of Cooper's Run farm, and collections otherwise, to be made as speedily as possible. It is my wish and direction to them to make the purchases of all the lands herein directed to be bought, within twelve months after my decease, if practicable to do so. If the whole cannot be purchased in that time, then to buy so far as they have moneys collected."

On the trial the cause was submitted on the following agreed statement of facts:

"A. C. Marsh died in the state of Kentucky, about the year 1876, testate.

"That the plaintiff, Mattie Naylor, and defendants, W. C. Godman and Josephine Way and Burton L. Godman, Mollie Emerson and Beal Godman, were the

children of Mary R. Godman, named in the third clause of said will, and that all of them were living at the death of the testator, A. C. Marsh.

"That Burton L. Godman died before there was any division of the property mentioned in Marsh's will and before the executor had invested the entire assets of the estate in real estate, as required in the third clause of the will, without issue.

"That none of the children of Mary R. Godman had children or descendants at the time of the execution of the will, but that W. C. Godman did have one child at the time of the testator's death.

"That the land mentioned in the petition in this case was purchased by the executor of A. C. Marsh, and assigned to Beal Godman in the distribution as the one-sixth devised to him and his children by the third clause of said will.

"That Mollie Emerson died about 1882, leaving one child, Eddie H. Emerson.

"That Beal Godman died without issue about 1888 and that he left surviving him the plaintiff, Mattie Naylor, his sister, and defendants, W. C. Godman, his brother, and Josephine Way, his sister, Melvin Godman, his father, and Eddie H. Emerson, son of his deceased sister Mollie.

"That the other defendants are children of W. C. Godman and of Mattie Naylor.

"That the interests of the parties to this suit depend upon the true construction of the will of A. C. Marsh; and that otherwise there is no question as to the title to the land described in the petition."

This was all the evidence offered. The court then at the instance of the defendants, Wm. C. Godman and Josephine C. Way, gave the following declarations of law: "1. The court declares the law to be that under the undisputed evidence in this case the plaintiff,

Mattie B. Naylor, and defendant, Josephine C. Way, were the sole or only surviving sisters, and said Wm. C. Godman, the sole surviving brother of Beal Godman, deceased, within the meaning of the term, 'surviving brothers and sisters,' as used in the will of A. C. Marsh, read in evidence; and that, under the evidence in this case, the remainder, in the lands in suit, after the death of Beal Godman, vested in and became the property of said Mattie B. Naylor, Josephine C. Way and William C. Godman, under the provisions of said will, as tenants in common, at the death of said Beal, if the court believe from the evidence that said Beal Godman died without issue living at the time of his death.

"2. The court declares the law to be that the true intent and meaning of the words, 'shall die without issue,' in the fourth clause of the will of A. C. Marsh, is 'issue living at the death' of anyone of the named grandchildren; and, as applied to this case, 'living at the death' of said Beal Godman; and, if the evidence shows that said Mattie B. Naylor, Josephine C. Way, and William C. Godman were the only brother and sisters of Beal Godman, who survived him, and that he died without such issue, then they alone take in remainder any present interest under said will at the time of said Beal's death."

The court thereupon found that the land mentioned in the petition was the property of plaintiff, Mattie Naylor, and defendants, W. C. Godman and Josephine C. Way, as the sole surviving brother and sisters of Beal Godman, and that each of them was entitled to an undivided one-third thereof; and that the other defendants, including defendants, Eddie H. Emerson and Melvin Godman, had no interest in said land.

I. The correctness of the ruling made by the circuit court is the only question presented.

Under the terms of the third clause of the will Beal Godman only took a *life-estate*, so that if the fourth clause of that instrument is to be taken *literally*, it is simply *meaningless;* such an interpretation is, therefore, inadmissible. What the testator evidently meant was that upon the death of any one of the grandchildren without issue his portion of the land in which he would otherwise have a life-estate, and his child or children the remainder, should become the property of his brothers and sisters who survived him. Construed in any other way, the fourth clause of the will is wholly inoperative; but the familiar rule is that every clause in a will shall have some operation, and be effective for some purpose.

II. Our statute provides that: "Where a remainder in lands or tenements * * * shall be limited, by deed or otherwise, to take effect on the death of any person without heirs, or heirs of his body, or without issue, or on failure of issue, the words 'heirs,' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor." R. S. 1889, sec. 8837.

This statute was evidently enacted to prevent from having the words, "die without issue," construed to mean an "indefinite failure of issue," as by some of the authorities the former words were construed to mean. If the position taken in the first paragraph of this opinion be correct then the fourth clause of the will is good as an executory devise, for the limitation over is not too remote because it is determined at the death of the grandchild. *Faust's Adm'x v. Birner*, 30 Mo. 414; *Chew v. Keller*, 100 Mo. 362; 2 Kent [13 Ed.] 277, *et seq.; Fosdick v. Cornell*, 1 Johns. 440; *Jackson v. Staats*, 11 Johns. 338; *Jackson v. Christman*, 4 Wend. 277; *Cutter v. Doughty*, 23 Wend. 513; *Lovett, Ex'r, v. Buloid*, 3 Barb. Ch. 137

In this case at the time of the death of Beal Godman, who under the statute was the "ancestor," the only persons answering to the description of the persons mentioned in the fourth clause, as the "surviving brothers and sisters of deceased," were Wm. C. Godman, Josephine Way and Mattie Naylor.

III.   Contention is, however, made that where the words in the will refer to the death of the devisee, where such gift is immediate, that is, to take effect in possession, such words are *always* construed to mean death of the devisee before the death of the testator. But this is stating the doctrine too broadly.

The author cited states the rule thus: "But although in the case of an *immediate* gift it is generally true that a bequest over, in the event of the death of the preceding legatee, refers to that event occurring in the lifetime of the testator, yet this construction is only made *ex necessitate rei*, from the absence of any other period to which the words can be referred, as a testator is not supposed to contemplate the event of himself surviving the objects of his bounty; and, consequently, where there is another point of time to which such dying may be referred (as obviously is the case where the bequest is to take effect in possession at a period subsequent to the testator's decease), the words in question are considered as extending to the event of the legatee dying in the interval between the testator's decease, and the period of vesting in possession." 3 Jarman on Wills, 611.

And it is said that the testator contemplated and made provision for a lapse only when there is a clear intimation to that effect.   *Cowley v. Knapp*, 13 Vroom, 297.

Upon the reasons stated, the judgment should be affirmed.   All concur, but BARCLAY, J., absent.