THENA EWART ET AL., Appellants, v. JOHN N. DALBY ET AL.—5 S. W. (2d) 428.

Division One, March 3, 1928.

*R. M. Nichols* for appellants.

*Eliot, Blayney & Bedal, Boyle & Priest, Robert E. Moloney, Nagel & Kirby, Buder & Buder, Carter, Jones & Turney* and *Harold R. Small* for respondents.

SEDDON, C.—This is an action instituted by plaintiffs under the statute (Sec. 525, R. S. 1919) to establish a paper writing alleged to be the last will and testament of Solomon P. Sublette, after the Probate Court of the City of St. Louis had rejected, and refused probate of, said alleged will. The action was commenced on October 7, 1907, against certain individual defendants by the filing of a petition in which plaintiffs and the individual defendants were alleged to be the only heirs at law of the said Solomon P. Sublette, as well as the only beneficiaries under the said alleged will. Upon a trial before a jury in the Circuit Court of the City of St. Louis, plaintiffs had a verdict establishing the paper writing as the last will and testament of said Solomon P. Sublette, and judgment was entered in accordance with said verdict on December 13, 1907. Subsequently, and during the term of court at which such verdict was returned and the judgment thereon was entered, one Terry, a stranger to the action, filed a motion therein, suggesting that he and other parties were interested in the probate of said will, claiming to own and hold title to large and valuable tracts of land located in the city of St. Louis, as heirs and purchasers under said Solomon P. Sublette, and praying the said circuit court to set aside the verdict and judgment entered as aforesaid and to order a new trial of the issues, and that he and other claimants of title to lands affected by said alleged will, be allowed to enter their appearance as defendants in said action. The said circuit court, of its own motion and by an order entered of record at and during the same term at which the judgment was entered, directed that said verdict and judgment establishing said will be set aside and for naught held, and from such order the plaintiffs appealed to this court, resulting in an affirmance of the order nisi by this court. (See Ewart v. Peniston, 233 Mo. 695, which contains a full and complete recital of the facts and procedural steps hereinabove stated.)

On January 29, 1926, plaintiffs, by leave of the Circuit Court of the City of St. Louis, filed in said action an amended petition, bringing in additional parties plaintiff, and making the National Lead

Company; Anheuser-Busch, Incorporated; St. Louis Smelting & Refining Company; Hydraulic-Press Brick Company; Evens & Howard Fire Brick Company; and Carondelet Foundry Company (corporations), parties defendant. The amended petition was further amended by interlineation on July 6, 1926. It appears from the allegations of said amended petition that plaintiffs claim to be all of the heirs of Samuel Sublette, Joseph Burton Sublette, Hill Sublette and Littleberry Sublette, deceased, who were the only heirs of Philip A. Sublette, deceased, who was the father of the alleged testator, Solomon P. Sublette. The salient allegations of the amended petition, as amended by interlineation, are as follows:

"Plaintiffs for cause of action state that Solomon P. Sublette, a resident of the County of St. Louis, now City of St. Louis, Missouri, died in said county on or about, to-wit, August 30, 1857; that on, to-wit, the 15th day of April, 1856, in the County of St. Louis, in his lifetime, the said Solomon P. Sublette made and executed his last will and testament, in writing, signed by said testator, attested by two witnesses who subscribed their names thereto, at the request of said testator and in his presence, which said will is in words and figures following, to-wit:

" 'In the name of God and man, I, Solomon P. Sublette, of the County of St. Louis, State of Missouri, dispose of my property as follows:

" 'First. That all just debts be paid.

" 'Second. Bequeath to my beloved wife, Frances, all personal property and real estate in the Counties of St. Louis, Cole, Jackson and elsewhere, and at her death bequeath all of said property to my daughter, Esther Frances (Fannie), and if she dies single and unmarried and without issue, to my brother, Pinkney W. Sublette, if living, and at his death if single and unmarried and without issue, I bequeath said property to my next of kin on my father's side. This my last will and testament.

" 'In witness whereof my hand and seal, this 15th day of April, 1856, on farm near St. Louis, Missouri.

SOLOMON P. SUBLETTE.

" 'Witnesses:

" 'E. C. Smith,

" 'James S. Thompson.'

"That after the death of said Solomon P. Sublette, to-wit, on December 14, 1896, the said will was presented to the Probate Court of the City of St. Louis, Missouri, for probate, and due proof of the execution of the same and of the fact that the said Solomon P. Sublette was of sound mind at the time of the making of the said will was

presented to said probate court, and that on said date said will was by said probate court rejected. . . .

"Plaintiffs further aver that Frances Sublette, widow of Solomon P. Sublette, to whom was given in said will a life estate, died in September, 1857; that the said Esther Frances (Fannie) Sublette died on May 16, 1861, in infancy, single, unmarried and without issue, and that the said Pinkney W. Sublette died after the death of Esther Frances Sublette, unmarried and without issue; . . ."

The above-named corporate defendants demurred to the amended petition, upon the following grounds:

"1. That said second amended petition does not state facts sufficient to constitute a cause of action.

"2. That plaintiffs are not interested in the probate of the alleged will set forth in said second amended petition under the provisions of Section 525, Revised Statutes of Missouri, 1919, or under the provisions of Section 4622, Revised Statutes of Missouri, 1899, and are, therefore, not competent-to bring this suit.

"3. That the court has no jurisdiction of the subject-matter of this action.

"4. That the plaintiffs are not interested in the probate of the alleged will set forth in plaintiffs' amended petition, because even if the paper so referred to be the last will and testament of Solomon P. Sublette, it appears on the face of the said alleged will and from the allegations of said amended petition that Esther Frances (Fannie), daughter of said Solomon P. Sublette, acquired, upon the death of said Solomon P. Sublette, an absolute title in fee simple to his property, and that neither the plaintiffs herein nor their ancestors, through whom they claim, as set forth in said amended petition, acquired any interest in said property under said alleged will."

The circuit court sustained the demurrer to said amended petition, whereupon plaintiffs, in open court, declined to plead further, and judgment was entered dismissing the action at the cost of plaintiffs. From the judgment of dismissal so entered, plaintiffs were allowed an appeal to this court.

I. The instant suit is a purely statutory action to establish a rejected will, and therefore plaintiffs, by the allegations of their petition, must bring themselves strictly within the statutory requirements necessary to confer the right of action; otherwise, the petition states no cause of action. [State ex rel. v. McQuillin, 246 Mo. 674; Gruender v. Frank, 267 Mo. 713.] The statute (Sec. 525, R. S. 1919), under and by virtue of which the plaintiffs seek to maintain the instant action, by its terms specifically requires that a suit which has for its purpose and object the proving and establishment of a will which has been

rejected must be instituted by a "person interested in the probate" of such will. The words of the statute, "person interested in the probate of any will," have been judicially construed and defined by this court to mean a person who has "a direct pecuniary interest in the final determination of the question as to whether the instrument is the last will of the decedent." [Braeuel v. Reuther, 270 Mo. 603, 604; Gruender v. Frank, 267 Mo. 713, 718; State ex rel. v. McQuillin, 246 Mo. 674, 691; Teckenbrock v. McLaughlin, 246 Mo. 711, 719; Watson v. Alderson, 146 Mo. 333, 343.] It therefore follows that, unless the allegations of plaintiffs' petition herein disclose that plaintiffs have a direct pecuniary interest in the final determination of the question whether the alleged paper writing is the last will of Solomon P. Sublette, so as to bring plaintiffs within the class of parties designated by the statute, i. e., "person(s) interested in the probate" of such purported will, the petition fails to state facts sufficient to constitute a cause of action, and the trial court rightly sustained the demurrer to the petition upon that ground.

The petition herein alleges that plaintiffs are, and constitute, "all of the heirs of Samuel Sublette, Joseph Burton Sublette, Hill Sublette and Littleberry Sublette, deceased, who were the only heirs of Phillip A. Sublette, deceased, the latter of whom was the father of Solomon P. Sublette, deceased, the probate of whose last will and testament is herein sought." Under the instrument or paper writing, alleged in the petition to be the last will and testament of Solomon P. Sublette, the testator purported to make disposition of all of his property, real and personal, in the following manner: (1) "to my beloved wife, Frances, and at her death" (2) "to my daughter, Esther Frances (Fannie)," (3) "and if she dies single and unmarried and without issue, to my brother, Pinkney W. Sublett, if living," (4) "and at his death, if single and unmarried and without issue . . . to my next of kin on my father's side." The respective deaths of the several persons mentioned by name in the purported will are alleged in the petition to have occurred on the following dates: Solomon P. Sublette, the testator, August 30, 1857; Frances Sublette, widow of testator, September, 1857; Esther Frances (Fannie) Sublette, daughter of testator, May 16, 1861; Pinkney W. Sublette, brother of testator (exact date not alleged) after the death of Esther Frances (Fannie) Sublette. Hence, according to the allegations of the petition, all of the persons mentioned by name in the purported will of Solomon P. Sublette survived the testator. It is apparent from the allegations of the petition that plaintiffs do not claim to be the heirs of Frances Sublette, widow of the alleged testator, or of Esther Frances (Fannie) Sublette, daughter of the alleged testator, or of Pinkney W. Sublette, brother of the alleged testator, but that they claim solely as the heirs of Philip A. Sub-

lette, deceased, who was the father of the alleged testator; and, therefore, if plaintiffs have any direct pecuniary interest in the establishment of the alleged will, it is because they take an estate or interest in the devised property under and by virtue of the concluding words in the first sentence of the second item or paragraph of the will, viz., "to my next of kin on my father's side." If plaintiffs do not take an estate in the devised property under and by virtue of the alleged will, if such will be established, and if, on the other hand, any one of the persons mentioned by name in said alleged will took, and became vested with, an absolute and indefeasible estate in said devised property during his or her lifetime, then plaintiffs have no pecuniary interest in the probating and establishment of the alleged paper writing as the last will of Solomon P. Sublette, and they do not fall within the class designated by the statute as parties entitled to institute an action to establish a rejected will. Consequently, in reviewing the action of the trial court in sustaining the demurrer to plaintiffs' petition, it becomes necessary for us to construe the second paragraph of the alleged will in order to determine whether plaintiffs take an estate or interest in the devised property under the will, if the will be established, so as to bring them within the class of parties designated by the statute.

But plaintiffs contend that the sole issue to be determined in the instant statutory action is whether or not the alleged writing is the will of the purported testator, and therefore they argue that this court cannot construe or interpret the alleged will for any purpose upon this appeal. Plaintiffs cite the decisions of this court in Cox v. Cox, 101 Mo. 168; Owens v. Sinklear, 110 Mo. 54; Gordon v. Burris, 141 Mo. 602; and Lilly v. Tobbein, 103 Mo. 477, in support of their contention. While the above decisions cited by plaintiffs are to the effect that the sole issue to be tried and determined in a statutory suit to establish a rejected will is "whether the writing produced be the will of the testator or not," and although it is said therein that the court cannot, in such statutory suit, try and determine any other or extraneous issues, but must leave such extraneous issues to be determined in another and different action, yet the precise question presented in the instant suit was not involved or discussed in any of the cited decisions. It seems clear, under our recent rulings in Braeuel v. Reuther, Gruender v. Frank, and State ex rel. v. McQuillin, supra, that plaintiffs must bring themselves within the statutory requirement by alleging in their petition facts which show that they are "persons interested in the probate" of the alleged will, and that both the trial court and this court may examine and construe the alleged will for the purpose of determining the single question whether the plaintiffs have a direct pecuniary interest in the property purporting to be devised by the will, if the will be es-

118

tablished, so as to constitute them parties eligible under the statute to institute and maintain such action.

II. The question upon which the instant action turns, and upon which this appeal must be ruled and determined, is whether Esther Frances (Fannie) Sublette, daughter of the testator, under and by virtue of the language used in the alleged will, became vested with an absolute and indefeasible estate in fee simple in the devised property. Plaintiffs contend that Esther Frances (Fannie) Sublette, daughter of testator, took a qualified or defeasible fee in the devised property, which terminated at the time of her death, she being then single and unmarried and without issue, and that a qualified or defeasible fee in the devised property thereupon shifted and passed to Pinkney W. Sublette, the brother of the testator, which qualified fee terminated upon his death, he being then single and unmarried and without issue, and that the absolute fee in the devised property thereupon passed to, and vested in, testator's next of kin on his father's side, under and through whom plaintiffs claim title to the devised property. Defendants contend that Esther Frances (Fannie) Sublette, daughter of the purported testator, immediately upon the death of the testator, took an absolute and indefeasible estate in fee simple in the devised property, subject only to the life estate of the widow, Frances Sublette, and that the devise or limitation over to Pinkney W. Sublette did not take effect. The solution of the question therefore depends upon the time to which the words, "and if she (i. e., Esther Frances Sublette) dies single and unmarried and without issue," are referable. Plaintiffs contend that such words must be construed to mean and refer to death of Esther Frances Sublette, single and unmarried and without issue, at any time, whether occurring before or after testator's death, or, more particularly, that such words have reference to the time of the death of the daughter. Defendants contend that such words must be construed to mean and refer to death of Esther Frances Sublette, single and unmarried and without issue, occurring before the death of testator.

The alleged will provides that, at the death of the widow of the testator, the devised property shall go to "my daughter, Esther Frances (Fannie)." It is clear, under our statute (Sec. 2265, R. S. 1919), that such language of the purported will, without the use and inclusion of the word "heirs," or other words of inheritance, created an estate in fee simple in the daughter, Esther Frances (Fannie), except as qualified or limited by the succeeding words, "and if she dies single and unmarried and without issue, to my brother, Pinkney W. Sublette," etc. Therefore, if the words, "if she dies single and unmarried and without issue," are referable to the time of the death

of the daughter, then the daughter, Esther Frances, took a qualified or defeasible fee in the devised property, subject to be divested or terminated upon, and at the time of, the death of the daughter, single and unmarried and without issue. On the other hand, if the words, ''if she dies single and unmarried and without issue,'' are referable either to death of the daughter occurring prior to the death of the testator, or to death of the daughter occurring prior to the death of the life tenant, then, it appearing from the allegations of the petition herein that the daughter, Esther Frances, survived both the testator and the life tenant, the contingency upon which the estate of the daughter was to terminate never occurred, and she became vested with an absolute and indefeasible estate in fee simple in the devised property, and the limitation over to Pinkney W. Sublette never took effect.

It is well-settled law that a testator, in making his will, may provide for and fix the absolute vesting of the different estates created thereby at such times as he sees fit within the period allowed by law, and when he has done this with reasonable clearness and certainty, the courts, in construing his will, will give effect to his expressed intent. Cases often arise, however, wherein a testator has failed to express with reasonable clearness and certainty, by the language used in the will, the time when he intended an estate created by the will to vest absolutely, and in such cases the courts have found it necessary to call to their aid certain recognized and established rules of construction in endeavoring to arrive at the true intent of the testator. It is in such cases, wherein the intent of the testator is vaguely and uncertainly expressed in the language of his will, that the courts have experienced difficulty in ascertaining the testator's true intent. As expressed by one of the learned textwriters, ''testamentary language referring to the death or to the survivorship of beneficiaries, whether named as individuals or comprised in a class, presents some of the most difficult problems of construction.'' [1 Underhill on Wills, sec. 341.]

The law favors vested estates, and one of the recognized rules of construction is that an estate will be held to vest at the earliest possible moment of time, which ordinarily is immediately upon the testator's death, unless a clear and certain intention to the contrary is manifested in the will. [40 Cyc. 1650; Tindall v. Tindall, 167 Mo. 218, 225.] Therefore, it has been recently ruled a number of times by this court that, where a devise is made to a beneficiary with a limitation over to another beneficiary contingent solely upon the death of the first named devisee, uncoupled with any

other event or contingency, the will must be construed to refer to death of the first named devisee occurring during the lifetime of the testator, unless the language of the will clearly indicates a contrary intention. [Northcutt v. McAllister, 297 Mo. 475; Huntington Real Estate Co. v. Megaree, 280 Mo. 41; Howard v. Howard, 184 S. W. 993.] Accordingly, in the cases just cited, it was ruled that the surviving primary devisee, whose death was made the contingency for the taking effect of a limitation over, became vested with an absolute estate in the devised property immediately upon the death of the testator, and that the limitation over became inoperative.

In the instant case, however, we have presented for our construction a purported will wherein a limitation over is made contingent not only upon the death of the primary devisee, but wherein the contingency of the death of the primary devisee is coupled with another contingency, or status; that is to say, the devise or limitation over is made to take effect upon the death of the primary devisee and the existence of another and collateral contingency, or status. The question therefore is whether, because of such double contingency (i. e., the death of the primary devisee, single and unmarried and without issue) provided against in the will in the instant case, such will calls for the application of another and different rule of construction than that which is applied to a will wherein simply the death of the primary devisee is made the single contingency for the taking effect of a devise or limitation over. An examination of the authorities bearing upon the subject convinces us that, by the great weight of authority, the same rule of construction is applied in either circumstance.

In 28 Ruling Case Law, 259, it is said: "It is the general rule that where property is devised to one with a provision for a gift over in case of the death of the legatee or devisee without issue, or without having surviving issue, the event referred to is death without issue during the lifetime of the testator. The intention of the testator is presumed to be to prevent a lapse."

In Dameron v. Lanyon, 234 Mo. 627, this division of this court had under construction a will wherein the testator devised and bequeathed the residuary estate to his four named children, to be equally divided among them, with the provision that "should either of my children die without issue before he or she shall have received his or her share of my estate, the share of such deceased child shall be equally divided among his surviving brothers and sisters, but if such child shall leave him surviving child or children, such child or children shall receive its parent's share." The four children named in the will survived the testator, but, shortly after the death of testator, the eldest of the four named children died without issue,

but leaving a widow surviving him, who claimed a widow's share in the estate of her deceased husband. Judge VALLIANT, delivering the opinion of this court, therein said (l. c. 640, 644): "The decision of this case turns on the interpretation to be given the following part of the residuary clause: 'Should either of my children die without issue before he or she shall have received his or her share of my estate, the share of such deceased child shall be equally divided among his surviving brothers and sisters.' . . . Were those words designed to provide against a contingency of the death of a child occurring after the death of the testator and before actual distribution of the estate, or were they designed only to provide against a contingency of the death of a child before the death of the testator? . . . . If that were all there was in the will on that subject *it should be construed to refer to the death of a child before the death of the testator,* and the words 'before he or she shall have received' should be construed to mean before he or she shall have been entitled to receive, which would be in the ordinary course of administration of the estate." (Italics ours.) In that case, however, the will was a complicated one, and the court found in other clauses of the will such a clear expression of the intention of the testator that the words expressing the contingency shall have reference to a time subsequent to the death of testator as to make unnecessary the application of any subordinate rule of construction.

In Henderson v. Calhoun, 183 S. W. 584, this court was called upon to construe a will, paragraph 8 of which provided: "After all expenses are paid, the balance of my estate I bequeath to Margaret A. Calhoun, Sarah Jane Boyd, Robert A. Calhoun and William Calhoun and their heirs to be equally divided among the same, and if any of them die without issue their portion to revert to their brothers and sisters and to share and share alike." Margaret A. Calhoun (afterwards Mrs. Henderson) survived the testator, but died subsequently without issue, she and her husband not having had issue born alive as the result of their marriage. We therein said: "As Mrs. Henderson was alive when her uncle, William Calhoun (testator), died in 1882, we agree with counsel for appellant that Mrs. Henderson, by the terms and provisions of her uncle's will, and especially by virtue of paragraph 8, aforesaid, became the absolute owner of all the property which came to her from her uncle's estate. [Citing authorities.] The will of William Calhoun, taken as a whole, indicates upon its face an intention upon the part of said testator to dispose of all his property by the terms and provisions of said will. In the absence of any expressed intention to the contrary, it will be presumed that the testator intended that the provisions of paragraph 8 of the will aforesaid should become effective at his death. We therefore hold that Mrs. Henderson, upon the death of

said uncle, William Calhoun, became the absolute owner of all the property she thereafter received from his estate. [Citing authorities.]"

In the very recent case of Owens v. Men & Millions Movement, 296 Mo. 110, we were called upon to construe a will which, with respect to the particular paragraphs or clauses under construction, was quite similar to the alleged will in the instant case. In the Owens case, the testator, by the seventh paragraph of his will, devised and bequeathed "all the residue and remainder of my property that I may die seized, after the payment of the aforesaid bequests, to my daughter, Nellie May Owens, and to my son-in-law, William B. Owens, to be owned and held by them jointly, to have and to hold unto them and their heirs and assigns forever." In the eighth paragraph of his will, the testator provided that, in the event of the death of both daughter and son-in-law, then "I give, devise and bequeath to my granddaughter, Wavelee Oliver, formerly Wavelee Owens, all the residue and remainder of my property that I may die seized, to have and to hold unto her, her heirs and assigns forever." In the tenth paragraph of the will, testator provided: "It is my will in case my said daughter and son-in-law and granddaughter should all die without leaving any issue, then in such event all of my said property, real and personal, shall be divided into four equal parts, and one part shall go to each of the following," naming four corporate beneficiaries. The daughter, son-in-law and granddaughter, named in the will, all survived the testator, and were living during the pendency of the action brought to construe the will. In construing the will, Judge RAGLAND (then Commissioner), speaking for this division of this court, said (l. c. 118): "The controversy arises over the construction to be given paragraphs 'Seventh' and 'Tenth' of the will, and particularly with reference to the contingency described in the latter in this language: 'In case my said daughter and son-in-law and granddaughter should all die without leaving any issue, then in that event,' etc. There can be no question but that under paragraph 'Seventh,' if it were standing alone, Nellie May Owens and William B. Owens would take an estate in fee simple in the lands devised. If 'die without leaving any issue,' as used in the 'Tenth' paragraph, means dying within the lifetime of the testator, then the contingency never happened, and never can happen, and their title is absolute. On the contrary, if 'die without leaving any issue' refers to a time subsequent to the death of the testator, then the two paragraphs, when read together, give Nellie May Owens and William B. Owens merely a defeasible fee. Their estate would terminate upon their dying without issue. Whether, therefore, they take the fee subject to an executory devise, or whether they take absolutely, depends upon the construction adopted with respect to

the words, 'die without leaving any issue.' Decisions construing the meaning of the words 'dying without issue,' or words of like import, when used in wills, are without number. Some of the cases take the view that when the context is silent, words referring to the death of the first taker in connection with some collateral event apply where the contingency happens after, as well as before, the death of the testator. [Britton v. Thornton, 112 U. S. 526; Fifer v. Allen, 228 Ill. 507.] But the great weight of authority supports the rule, that when real estate is devised in terms denoting an intention that the primary devisee shall take a fee on the death of the testator, coupled with a devise over in case of his death, without issue, the words refer to a death without issue during the lifetime of the testator, and the primary devisee surviving the testator takes an absolute estate in fee simple. The intention of the testator is presumed to be to prevent a lapse. [Kohtz v. Eldred, 208 Ill. 60, 69; King v. Frick, 135 Pa. St. 575; Calloway v. Calloway, 171 Ky. 366, 372; Tarbell v. Smith, 125 Iowa, 388; Lumpkin v. Lumpkin, 108 Md. 470; Morgan v. Robbins, 152 Ind. 362; Vanderzee v. Slingerland, 103 N. Y. 47; Skey v. Barnes, 25 Eng. Rul. Cas. 603, American Notes; 28 R. C. L. 259.] The rule just stated is in accord with the settled policy of the courts of both this country and England, that words of doubtful meaning will be so construed as to favor the heir; as to give an estate of inheritance to the first devisee; as to vest the title to an estate so that it will not remain in abeyance.''

Schouler on Wills (1926 Supp. to 6 Ed.), section 1050, page 179, states the prevailing and generally accepted rule thus: ''The general rule is that where property is devised or bequeathed to a person, with a provision that it should go to a certain other person or persons upon the death of the first taker without issue, without heirs, or without heirs of the body, or a similar provision, the event of death referred to is death during the testator's lifetime. If the first taker survives the testator, he takes an indefeasible fee or interest, unless the will, by other words, indicates a contrary intent.''

We deem the foregoing rule to be well established as a recognized and available rule of construction in this State, as is evidenced by the use and application of such rule in the aforecited decisions of this court. Plaintiffs have directed our attention to several earlier decisions of this court, which plaintiffs say announce and adhere to another and different rule of construction. We have given thoughtful study and analysis to those decisions, and we deem them inapplicable to the precise question under consideration in the instant case. Furthermore, we do not regard those decisions as being in conflict with the later decisions of this court, hereinbefore cited. The great weight of judicial opinion and authority, as expressed in the most recent decisions of the appellate courts of other States of this

nation, gives sanction to the aforesaid rule as being a correct, sound and available rule of construction. [Lovass v. Olson, 92 Wis. 616; Neubert v. Colwell, 219 Pa. St. 248; Matter of Disney, 190 N. Y. 128; Teal v. Richardson, 160 Ind. 119; Collins v. Collins, 116 Iowa, 703; Spira v. Frenkel, 210 Ala. 27; Rue v. Lisle, 200 Ky. 520; Seewald's Estate, 281 Pa. St. 483.]

III. Plaintiffs contend, however, that the aforesaid "rule does not obtain where the primary gift was preceded by a life estate." But plaintiffs are in no better position herein because of such contention, for it has been ruled by respectable judicial authority that, where an estate is devised to one for life, with remainder in fee simple to another, with the further provision that, if such remainderman shall die without issue, then to a third person, the words, "die without issue," are referable to death of the remainderman before the termination of the antecedent life estate, or otherwise expressed, the words are referable to death of the remainderman occurring during the lifetime of the life tenant, and the surviving remainderman takes an absolute and indefeasible estate in fee simple immediately upon the death of the life tenant. Plaintiffs allege in their petition herein that Esther Frances (Fannie) Sublette survived both the testator and his widow, the life tenant named in the devise, and under the rule of construction just stated, she took an absolute and indefeasible fee in the devised property immediately upon the death of the life tenant and the consequent termination of the antecedent estate.

In re Farmer's Loan & Trust Co., 189 N. Y. 202, 207, it is said: "Ordinarily, in providing a gift over, in case of the death without issue of a legatee, the time of death, unless a different intent appears, will be held to refer to a death occurring during the lifetime of the testator. But where the disposition of the property which is devised over in case of death is preceded by a prior estate for life or years, then the general rule is that the time of death refers to that which occurs during the period of the intervening estate."

In Mayer v. Walker, 214 Pa. St. 440, 444, it is said: "The phrase used by the testator, 'if he should die without any lawful heirs,' is the equivalent because of the context of 'in case he should die without issue.' Where an absolute estate is followed by these words, it is a settled principle of interpretation that they will be understood as referring to death without issue in the lifetime of the testator, if the gift is immediate; or during the continuance of the life estate, if it is not: and if the donee survives the testator or the continuance of the intervening estate, his interest becomes absolute and indefeasible."

In White v. White's Guardian, 168 Ky. 752, 754, it is said: "It is the settled rule in this State that if property is devised to one for life, with remainder to another, and if the remainderman die without issue, then to a third person, the limitation as to dying without issue is restricted to the death of the remainderman before the termination of the particular estate."

A similar thought was expressed by SHERWOOD, P. J., speaking for this court, in Naylor v. Godman, 109 Mo. 543, 551, when he quoted the following from Jarman on Wills, 611: "But although in the case of an *immediate* gift it is generally true that a bequest over, in the event of the death of the preceding legatee, refers to that event occurring in the lifetime of the testator, yet this construction is only made *ex necessitate rei*, from the absence of any other period to which the words can be referred, as a testator is not supposed to contemplate the event of himself surviving the objects of his bounty; and, consequently, where there is another point of time to which such dying may be referred (as obviously is the case where the bequest is to take effect in possession at a period subsequent to the testator's decease), the words in question are considered as extending to the event of the legatee dying in the interval between the testator's decease and the period of vesting in possession."

On the other hand, there is respectable judicial authority to the effect that where there is a provision in a will devising lands to testator's widow for her life, and at her death the lands are to go in fee simple to a certain named beneficiary, to which is added a proviso that, in event the person to whom is devised the fee shall die without heirs, or without issue, then the fee shall vest in certain other named devisees, the words expressing the contingency have reference to death of the devisee occurring within the lifetime of the testator, notwithstanding the provision made for a preceding or antecedent life estate. [Tarbell v. Smith, 125 Iowa, 388; Taylor v. Stephens, 165 Ind. 200; Duzan v. Chappel, 41 Ind. App. 651.]

IV. Many of the decisions of this State cited and relied upon by plaintiffs herein discuss the question of an indefinite failure of issue, and the effect and applicability of the statute (Sec. 2268, R. S. 1919) with respect to such question. In our opinion, the aforesaid statute is not applicable, as stating an available rule of construction, to the precise question we are called upon to rule in the instant case, and does not supersede the rule of construction which is applicable to the alleged will herein. The aforesaid statute was invoked and relied upon by the appellants in the case of Owens v. Men & Millons Movement, 296 Mo. 120, supra, and was held by us to be inapplicable. We therein said: "In sup-

port of their contention that the words 'die without leaving any issue,' in paragraph 'Tenth' (of the will under construction in that case), should be construed as meaning death whenever it should occur, whether before or after the death of the testator, appellants invoke the statute (Sec. 2268, R. S. 1919), which provides: 'Where a remainder in lands or tenements, goods or chattels, shall be limited, by deed or otherwise, to take effect on the death of any person without heirs, or heirs of his body, or without issue, or on failure of issue, the words "heirs" or "issue" shall be construed to mean heirs or issue living at the death of the person named as ancestor.' This statute was enacted for the purpose of abrogating the early common-law rule under which the words 'die without leaving issue' were construed to mean an indefinite failure of issue. [Naylor v. Godman, 109 Mo. 550; Yocum v. Siler, 160 Mo. 295.] The question in this case is not whether the words 'die without leaving any issue' mean issue living at the time of the death of the ancestor, or an indefinite failure of issue, but whether they refer to deaths occurring during the lifetime of the testator, or subsequently. The rule of construction embodied in the statute is therefore inapplicable. [2 Jarman on Wills (6 Ed.) 1963.]''

A similar statute of the State of Kentucky was invoked in Harvey v. Bell, 118 Ky. 512, 520, and was held to be inapplicable upon like reasoning, the court saying in that case: ''The statute simply abolishes the common-law rule by which such words were construed to refer to an indefinite failure of issue, and makes the estate to depend only on the failure of issue at the death of the person named. . . . We therefore conclude that the rights of the parties are not affected by either of these provisions, and are to be determined by the general rules governing the construction of wills.''

V. But it is said by plaintiffs that a reading and consideration of the alleged will of Solomon P. Sublette, as an entirety, makes manifest the intention of the testator that the daughter, Esther Frances, was to take only a defeasible fee in the devised property, which was to terminate at the time of her death in the event that she died single and unmarried and without issue. The alleged will is neither lengthy nor complicated, and the entire testamentary devise is contained within a single sentence. It may be conceded, of course, that if the alleged will clearly and certainly evidences the intention of the testator that the daughter was to take only a defeasible fee, and if it clearly and certainly appears from the context of the will that the words, ''and if she dies single and unmarried and without issue,'' were intended by the testator to refer to the moment or time of the death of

the daughter, then effect must be given to the true intent and meaning of the testator as expressed in the directions of the will, and all subordinate rules of construction must give way. [Sec. 555, R. S. 1919; Owens v. Men & Millions Movement, 296 Mo. 119.] But we find no such clear and certain expression of testator's intention to be contained in the alleged will herein. It is argued by plaintiffs that, inasmuch as the petition herein alleges that the daughter, Esther Frances, died "in infancy," that fact must be considered as a circumstance (surrounding the making of the will) strongly indicating that the testator did not have in mind the possibility that the daughter might not survive him, and therefore testator's use of the words, "and if she dies single and unmarried and without issue," shows that he placed the possibility of her death at a time when she would be old enough to marry and bear issue, which in all reasonable probability would be beyond his lifetime. The word "infancy," as used in law, means "minority; nonage; under the age of twenty-one years." [Webster's and Century Dictionaries.] The testator's daughter, Esther Frances, may so nearly have attained her majority at the time the alleged will was made that the testator may have deemed it a possibility that she might not survive him, and may therefore have used the words, "and if she die single and unmarried and without issue," to provide and guard against the contingency of the daughter's death occurring during his lifetime.

But plaintiffs argue further, and we quote the language of their brief: "The giving of the interest to the widow showed that the estate was not to take effect in possession, in the daughter Fannie, until a period subsequent to the death of the testator, so that the bequest was not immediate to Fannie, but was deferred to a period long after the death of the testator; the life estate in the widow, taking effect upon the death of the testator, might have lasted, in all possibilities, for years after his death. Therefore, we say that the vesting of the gift in Fannie, in possession, was deferred until the falling in of the life estate, and consequently the period of death of Fannie could not be referable to a period before the death of the testator."

We find no definite, clear and certain intention of the testator expressed in the context of the alleged will to which effect must be given in construing the will and in determining the time to which the words, "and if she dies single and unmarried and without issue," as used in the devise to Esther Frances (Fannie), are referable. Therefore, in endeavoring to arrive at the testator's intention, we must, perforce of the vagueness and uncertainty in the expression of testator's intention in the context of the will, call to our aid the established and recognized rules of construction hereinbefore mentioned. Applying those rules of construction to the alleged will, the words, "if she

dies single and unmarried and without issue," can only be construed as referring either to death of Esther Frances (Fannie) occurring during the lifetime of the testator, or to death of Esther Frances occurring during the lifetime of the life tenant. The petition herein alleges the fact to be that Esther Frances (Fannie) survived both the testator and the life tenant. Consequently, under either rule of construction, Esther Frances Sublette having survived both the testator and the life tenant, she became vested with an absolute and indefeasible estate in fee simple in the devised property, and the limitation or devise over to Pinkney W. Sublette became inoperative and of no effect.

It therefore follows that plaintiffs, who do not claim as heirs of Esther Frances Sublette, but who claim solely as the heirs of the next of kin of Phillip A. Sublette, the deceased father of testator, take no estate or interest in the devised property under the alleged will. Hence, plaintiffs are not "persons interested in the probate" of the alleged will and are not parties entitled to institute and maintain the present action within the purview of the statute authorizing such an action. The petition herein therefore fails to state facts sufficient to constitute a cause of action, and the trial court rightly sustained the defendants' demurrer thereto upon that ground. Plaintiffs having elected to stand upon the demurrer by refusing to plead further, the circuit court rightly entered judgment dismissing the action at plaintiff's costs.

The judgment *nisi* must be affirmed, and it is so ordered. *Lindsay* and *Ellison, CC.*, concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.